UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-24731-CIV-ALTONAGA/O'Sullivan

**KARLENS BENDLIS**,

      Plaintiff,
v.

**NCL (BAHAMAS), LTD.**,

      Defendant.
_____/

## ORDER

Defendant, NCL (Bahamas) Ltd., d/b/a Norwegian Cruise Lines ("Norwegian"), removed this action to federal court on December 15, 2014, invoking federal subject matter jurisdiction over maritime and admiralty law claims, and on the basis Plaintiff's Jones Act claim was fraudulently pled. (*See* Notice of Removal 2 [ECF No. 1]). In response, on January 14, 2015, Plaintiff, Karlens Bendlis ("Bendlis"), filed a Motion for Remand . . . ("Motion") [ECF No. 16]. Norwegian filed its Response in Opposition . . . ("Response") [ECF No. 20], on February 2, 2015, and Bendlis filed a Reply . . . ("Reply") [ECF No. 23], on February 19, 2015. The Court has carefully considered the parties' written submissions and applicable law, and for the reasons that follow, grants the Motion.

### I. BACKGROUND

According to Plaintiff's affidavit, he started working for Norwegian on May 17, 2009 as a utility galley on several of Defendant's cruise ships, including the Norwegian Dawn and the Norwegian Star. (*See* Affidavit of Karlens Bendlis ("Bendlis Affidavit") ¶ 2 [ECF No. 23-1]). Around March 11, 2011, Plaintiff finished his assignment working on the Norwegian Star. (*See id.* ¶ 3). Before Plaintiff left for his vacation, Defendant told him his next assignment would be working on the Norwegian Sun, starting June 13, 2011, and leaving from Copenhagen, Denmark.

(*See id.* ¶ 4). On March 12, 2011, Plaintiff returned to his home in Nicaragua and remained there through June 10, 2011. (*See id.*).

On June 11, 2011, Plaintiff traveled from Nicaragua to Copenhagen on a flight arranged by and paid for by Defendant, stayed in a hotel in Copenhagen that was arranged and paid for by Defendant, and was provided detailed instructions from Defendant on how to join the Norwegian Sun on June 13, 2011. (*See id.* ¶¶ 5, 6, 8; Amended Complaint ¶ 9 [ECF No. 1-1]). According to Plaintiff, "Norwegian Cruise Line arranged for [him] to travel to Copenhagen a day or two before June 13, 2011 to make sure that the ship was adequately manned for the voyage." (Bendlis Aff. ¶ 6).

While Plaintiff was in Copenhagen waiting to join the Norwegian Sun, he suffered an episode of complete mental disorientation and was admitted into the psychiatric ward of a hospital in Copenhagen, where he remained until June 24, 2011. (*See* Am. Compl. ¶¶ 9–10). The Amended Complaint details subsequent events pertaining to the medical treatment received by Plaintiff and additional injuries he suffered. (*See generally id.*). Over two years after the incident in Copenhagen, Plaintiff was diagnosed as having a cyst in his brain. (*See id.* ¶ 19). In his Amended Complaint, Plaintiff alleges Defendant is liable for: Count I, failure to provide prompt and adequate medical care, the "Jones Act" claim (*see id.* 2–14); Count II, failure to provide maintenance and cure (*see id.* 14–17); and Count III, intentional infliction of emotional distress (*see id.* 17–18).

According to Defendant, Plaintiff's employment with Norwegian concluded on March 11, 2011, and his last employment contract was governed by a Collective Bargaining Agreement providing "'[a]t the conclusion of an Employment Contract . . . the Seafarer will no longer be employed by NCL unless and until he signs a new Employment Contract.'" (Resp. 1–2 (alteration in original)). When Plaintiff became ill, Defendant asserts, Plaintiff had not yet

2

joined the Norwegian Sun, had not executed an employment contract to work on the Norwegian Sun, and was not working for or being paid by Norwegian. (*See id.* 2).

## II. LEGAL STANDARD

The Jones Act provides a cause of action in negligence for "a seaman injured in the course of employment." 46 U.S.C. § 30104. "A Jones Act claim has four elements: (1) plaintiff is a seaman; (2) plaintiff suffered an injury in the course of employment; (3) plaintiff's employer was negligent; and (4) employer's negligence caused the employee's injury, at least in part." *Holt v. F/V Sir Martin E., Inc.*, No. 5:13-cv-100-RS-CJK, 2014 WL 4825223, at *6 (N.D. Fla. Sept. 26, 2014) (citation omitted).

As a general rule, a Jones Act claim brought in a state forum may not be removed to federal court absent a showing the Jones Act claim has been fraudulently pled. *See Cushwa v. Ross*, 950 F. Supp. 2d 1276, 1278 (N.D. Ga. 2013) (citing 46 U.S.C. § 30104; and *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993)); *see also* 14AA CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3677 (4th ed.) ("If a state forum is chosen by the plaintiff, the case law makes it clear that the defendant may not remove the case to a federal court unless the Jones Act claim was interposed fraudulently; this results from the Jones Act's incorporation by reference of the provision in the Federal Employers' Liability Act limiting the defendant's right of removal in actions under that statute." (footnote call number omitted)).

As noted by another district court in the Eleventh Circuit, and similarly applicable here, "[t]he parties have not presented, and the [C]ourt has not found through its own research, any binding authority on the specific standard [the Court] should use to determine if a Jones Act claim has been fraudulently pled. The parties have, however, identified persuasive authority on

this issue, particularly from the Fifth Circuit." *Cushwa*, 950 F. Supp. 2d at 1278 (alterations added).

In the Fifth Circuit, "defendants sued under the Jones Act can defeat remand upon showing that plaintiffs' claims against non-diverse defendants are baseless in law and in fact and serve only to frustrate federal jurisdiction." *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175–76 (5th Cir. 1995) (alteration and internal quotation marks omitted) (quoting *Lackey*, 990 F.2d at 207). In determining whether plaintiff's claims are baseless and fraudulently pled, district courts may "use a summary judgment-like procedure," but "must resolve all disputed questions of fact and any ambiguities in the current controlling substantive law in favor of the plaintiff." *Id.* at 176 (citations omitted). "The burden of persuasion on a removing party . . . is a heavy one: The removing party must show that there is no possibility that plaintiff would be able to establish a cause of action." *Id.* (alteration added; internal quotation marks, footnote call number, and citation omitted).

### III. ANALYSIS

Plaintiff requests this case be remanded to his chosen state court forum on the basis his Jones Act claim is non-removable and Defendant has not met the high burden for proving fraudulent pleading. (*See* Mot. 2–12). According to Plaintiff, because Counts II and III of the Amended Complaint are not separate and independent of the Jones Act claim and arise from the same set of facts, they are also not removable. (*See id.* 2). In response, Defendant argues Plaintiff has no possibility of sustaining a Jones Act claim because he was not a "seaman" under the Jones Act at the time he became ill. (*See* Resp. 3). Without the benefit of the non-removability provision of the Jones Act, Defendant argues, Plaintiff's remaining general maritime law claims may be removed under 28 U.S.C. section 1441, as amended in 2011. (*See id.* 10). The primary point of contention between the parties — and the determining factor in the

Court's decision to grant Plaintiff's Motion — concerns Plaintiff's status as a "seaman" under the Jones Act.

Defendant argues Plaintiff does not meet the definition of a "seaman" under the two-part test articulated by the Supreme Court in *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995). According to *Chandris*, the first requirement for seaman status is that the "employee's duties must contribute to the function of the vessel or to the accomplishment of its mission." *Id.* at 368 (alteration omitted; internal quotation marks and citation omitted). "[T]his threshold requirement is very broad . . . ." *Id.* (alteration added; citation omitted). Under the second, and more demanding factor, the employee must show "a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.*

> The fundamental purpose of th[e] substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.

*Id.* at 368 (alteration added; citation omitted).[1]

Defendant asserts because Plaintiff had not yet signed a new employment contract or stepped foot on the Norwegian Sun at the time he fell ill, he did not contribute to the function of the vessel or the accomplishment of its mission, nor did he have a connection to a vessel in navigation, let alone a substantial one. (*See* Resp. 5). Thus, Defendant argues, under *Chandris*, Plaintiff was not a seaman and cannot maintain a Jones Act cause of action. (*See id.*).

---

[1] The "remedial scheme" is a reference to the Jones Act as contrasted with the Longshore and Harbor Workers' Compensation Act ("LHWCA"): if an employee is a seaman, he is eligible to recover under the Jones Act, whereas if an employee is a land-based maritime worker, the remedy is the LHWCA. *See Chandris*, 515 U.S. at 354–56. The Jones Act and the LHWCA are "mutually exclusive compensation regimes." *Id.* at 355–56. "Injured workers who fall under neither category may still recover under an applicable state workers' compensation scheme or, in admiralty, under general maritime tort principles

Case No. 14-24731-CIV-ALTONAGA

In his Motion and Reply, Plaintiff relies on a pre-*Chandris* decision of the Eleventh Circuit, *Archer v. Trans/American Services, Ltd.*, 834 F.2d 1570 (11th Cir. 1988), to demonstrate he has a viable cause of action under the Jones Act. The plaintiff in *Archer* was an assistant pantryman who, except for brief vacations, lived aboard defendant's cruise ships. *See id.* at 1571. During a period when the ship was placed in dry dock for maintenance and repairs and the plaintiff was required to vacate the ship, plaintiff signed a new employment contract for a one-year term beginning two weeks later, on January 23, 1984, and, thereafter left on an unpaid vacation. *See id.* 1571–72. On January 21, 1984, in accordance with the new employment contract, plaintiff returned from his vacation and checked in at his employer's office in Miami, where he was instructed to report to the ship on January 23 and was told he was free to do as he pleased until the ship's departure. *See id.* The following day, the plaintiff was injured while riding as a passenger in a friend's car. *See id.* at 1572.

The pertinent question in *Archer* was whether plaintiff was "'in the service of the ship,'" *id.* at 1573, or "had seaman status," *id.* at 1574, when he was injured. Because plaintiff's early return to Miami was a prerequisite to commencing work aboard the ship, the Eleventh Circuit found the lower court correctly concluded plaintiff had seaman status when he was injured. *See id.* at 1573–74. Here, Plaintiff argues he, too, was in the service of the ship and had seaman status when he became ill after his arrival in Copenhagen, as evidenced by the fact his travel and hotel were arranged and paid for by Defendant, and he needed to arrive a day or two before the Norwegian Sun was scheduled to depart in order to make sure the ship was adequately manned for the voyage. (*See generally* Reply).

Defendant insists *Archer* is squarely contradicted by *Chandris* and is no longer relevant and binding precedent. (*See* Resp. 8–9). The Court does not concur. In *Archer*, the Eleventh

---

(which are admittedly less generous than the Jones Act's protections)." *Id.* at 356 (citation omitted).

Circuit did not define the boundaries of what it means to be a seaman under the Jones Act. Rather, the plaintiff was presumed to qualify as a "blue water seaman" — *i.e.*, a member of the crew who live aboard the ship, differentiated from a seaman who lives ashore, *see id.* at 1575 n.3 — and the only relevant question as it pertains to this case was at what point in time plaintiff reacquired that status after his shore leave. *See id.* at 1575–76 (dissent noting, "beyond any question, Archer was a seaman in the service of the vessel at all times he was aboard [the] ship regardless of the identity of his employer. . . . [T]he ultimate question in the case is simply whether or not Archer was 'in the service of the ship' at the time of his accident and resulting injury." (alterations added)). In *Chandris*, the Supreme Court recognized there is a "spectrum ranging from the blue-water seaman to the land-based longshoreman," 515 U.S. at 356 (internal quotation marks and citation omitted), and, in issuing the two-part seaman test, intended to provide guidance to the lower courts on how to classify the myriad of cases and "varieties of maritime workers," *id.*, falling somewhere in between. The Court does not find these holdings mutually exclusive.

Defendant does not dispute when Plaintiff is working as a utility galley and living aboard Defendant's cruise ships for ten-month stints (*see* Reply 6), he is a blue water seaman. Consequently, Defendant's argument Plaintiff does not have a valid Jones Act claim appears much like the defendant's argument in *Archer*: at the time of Plaintiff's illness in Copenhagen, Plaintiff was not yet in the service of the ship or had not yet attained seaman status. *See Archer*, 834 F.2d at 1573. In light of *Archer*, which remains controlling and binding precedent, the Court does not find Plaintiff's Jones Act claim to be baseless in law and fact.

Moreover, assuming the seaman status test in *Chandris* is applicable, Defendant still has not met its high burden of demonstrating Plaintiff has no possibility of establishing a cause of action under the Jones Act. Defendant's argument Plaintiff has neither contributed to the

7

function of the vessel or to the accomplishment of its mission, nor established a connection to a vessel that is substantial in duration and nature, is based on its restricted view of the facts and its position the only relevant period of time to consider is after Plaintiff arrived in Copenhagen, and the only relevant vessel to consider is the Norwegian Sun. (*See* Resp. 4–5). Defendant has not identified any controlling substantive law supporting such a restricted view.

A broader consideration of Plaintiff's employment history with Defendant is consistent with the Supreme Court's rejection of "a 'snapshot' test for seaman status," wherein courts "inspect[] only the situation as it exists at the instant of injury." *Chandris*, 515 U.S. at 363 (alteration added; internal quotation marks and citation omitted). Instead, the Court held "the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon." *Id.* at 370 (internal quotation marks and citation omitted).[2] Such broader view has been applied by courts outside this District. *See Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 346 (5th Cir. 1999) ("[S]eaman-status is determined by the employee's entire employment-related connection to a vessel, and not by the immediate circumstances or location of the plaintiff's injury." (alteration added) (citing *Chandris*, 515 U.S. at 363)); *Stewart v. J.E. Borries, Inc.*, No. 1:06CV187-LG-JMR, 2007 WL 2915033, at *5 (S.D. Miss. Oct. 4, 2007) (rejecting defendant's argument that the relevant time period is a particular assignment, as "[t]he general rule is that the entire employment history with a particular employer is analyzed" (alteration added) (citing *Becker v. Tidewater, Inc.*, 335 F.3d 376, 388–89 (5th Cir. 2003))).

---

[2] In *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548 (1997), the Court clarified its decision in *Chandris*, stating "the employee's prior work history with a particular employer may *not* affect the seaman inquiry *if* the employee was injured on a new assignment with the same employer, an assignment with *different* 'essential duties' from his previous ones." *Id.* at 556 (emphasis added) (quoting *Chandris*, 515 U.S. at 371). Conversely, as here, where a new assignment with the same employer involves the same essential duties as previous assignments, the employee's prior work history with that employer *may* affect the seaman inquiry.

Furthermore, in *Harbor Tug and Barge Company*, the Supreme Court clarified the *Chandris* test's substantial connection prong, holding a plaintiff may prove substantial connection with "an identifiable group of vessels" so long as the vessels "are subject to common ownership or control." 520 U.S. at 557. Resolving any ambiguities in the controlling substantive law in favor of Plaintiff, *see Burchett*, 48 F.3d at 176, Plaintiff may demonstrate seaman status based on his prior work history with Defendant as a utility galley since 2009 and experience with other vessels owned by Defendant, such as the Norwegian Dawn and the Norwegian Star.

Defendant urges the Court to follow *Campbell v. Royal Caribbean Cruises, Ltd.*, No. G-08-0117, 2008 WL 6025977 (S.D. Tex. Nov. 21, 2008), *aff'd*, 349 F. App'x 872 (5th Cir. 2009) (per curiam), where the court found a ballet dancer who intended to spend seven months on defendant's cruise ship as an entertainer, but had not yet set foot on the cruise when he suffered an injury during a rehearsal, was not a Jones Act seaman when he was injured. *Id.* at *4. Based on *Campbell*, Defendant argues until Plaintiff actually set foot on the Norwegian Sun, he was, if anything, a land-based worker. (*See* Resp. 6–7). In *Campbell*, the determining factor for both the district court and the Fifth Circuit was that the plaintiff "never set foot upon any of Defendant's vessels," and "never once boarded a vessel where his employment would 'regularly expose him to the perils of the sea.'" *Campbell*, 2008 WL 6025977, at *4 (alterations omitted; quoting *Chandris*, 515 U.S. 368); *see also Campbell*, 349 F. App'x at 873 ("Campbell never embarked on any vessel."). Here, Plaintiff has set foot on Defendant's vessels and has been regularly exposed to the perils of the sea. Thus, *Campbell* is not instructive.[3]

---

[3] The cases cited by the district court in *Campbell* for the proposition "everyone found to be a Jones Act seaman had spent at least *some* time aboard a vessel" — the same cases cited by Defendant in footnote three of the Response — are also not instructive under the facts of this case. *Campbell*, 2008 WL 6025977, at *4 (emphasis in original). Several cases included in footnote three of *Campbell* involve clear land-based workers who were unable to demonstrate a substantial temporal connection to a vessel under

In light of the foregoing analysis, Defendant has not demonstrated there is no possibility Plaintiff can establish his Jones Act cause of action. In light of this finding, the Court does not consider Defendant's remaining argument regarding removal of Counts II and III of the Amended Complaint, as this argument is dependent on Defendant having satisfied its heavy burden with respect to the Jones Act claim.

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion **[ECF No. 16]** is **GRANTED**. This case is remanded to the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. The Clerk is directed to mark this case as **CLOSED**. Any pending motions are denied as moot. If necessary, Plaintiff may file any motions for attorney's fees once the related state court proceeding has concluded.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of March, 2015.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

the "rule of thumb" adopted in *Chandris*, where a worker "who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Chandris*, 515 U.S. at 371 (citation omitted). *See, e.g., Palmer v. Fayard Moving and Transp. Corp.*, 930 F.2d 437, 439–40 (5th Cir. 1991) (holding a land-based public relations agent for a vessel, who spent about 19 percent of her time aboard the vessel, was not a seaman). Other cases involve a plaintiff who was injured shortly after starting work, where the courts applied *Chandris*'s "no snapshot doctrine," and considered the plaintiff's "intended relationship [to the vessel], as if he had completed his mission uninjured." *Foulk v. Donjon Marine Co., Inc.*, 144 F.3d 252, 259 (3rd Cir. 1998) (alteration added) (citing *Chandris*, 515 U.S. at 362–64, 370–74); *see also Grothe v. Central Boat Rentals, Inc.*, No. G-08-0090, 2008 WL 2783457, at *3 (S.D. Tex. July 15, 2008) (remanding case where, in the absence of binding authority to the contrary, a court remained free to follow the reasoning of *Foulk* and allow plaintiff to qualify as a seaman "notwithstanding the brevity of his work aboard" defendant's vessel).

Defendant also relies on *Nunez v. B&B Dredging, Inc.*, 288 F.3d 271 (5th Cir. 2002), which is also not instructive in this instance.  (*See* Resp. 6).  *Nunez* involved a foreman who, although permanently assigned to a dredge, spent only ten percent of his work time aboard the dredge, and was thus determined to be a land-based employee, not a seaman. *Id.* at 274, 277.